UNITED STATES of America and Robert H. Burch, Federal Energy Investigator, Plaintiffs-Appellees,

v.

Louis K. BELL, President, Bell Oil Company, Respondent-Appellant.

No. 5–24.

Temporary Emergency Court of Appeals of the United States.

Argued Sept. 23, 1977.

Decided Oct. 11, 1977.

---

\* \* \* \* \* \*

William J. Cooney, Augusta, Ga., was on the brief for appellant.

Daniella Sapriel, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., and Stanley D. Rose,* Washington, D. C., were on the brief for appellees.

Before CHRISTENSEN, INGRAHAM and ESTES, Judges.

ESTES, Judge.

Respondent-appellant, Louis K. Bell, President, Bell Oil Company, appeals from an April 4, 1977 order of the District Court granting enforcement of a Federal Energy Administration (FEA) subpoena served on appellant on July 24, 1975. The subpoena of "The Federal Energy Administrator" was addressed to "Mr. Louis K. Bell, President, d/b/a Bell Oil Company"; was explicitly "issued . . . under authority of Section 206 of the Economic Stabilization Act of 1970, as amended, incorporated by Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended, and Section 13(e)(1) of the Federal Energy Administration Act of 1974, and 10 C.F.R. Sections 205.8 and 205.200";[1] was signed by Frederic Johnson, "Regional Administrator"; and bore the seal of the Federal Energy Administration. The Certificate of Service on the reverse of the subpoena also bears the seal of the FEA and certifies to the handing of an "attested copy of the subpoena to the person to whom it was directed."

The subpoena, which requires both testimony and production of documents, sought cost and pricing data relating to the purchase and sale of petroleum products by Bell Oil Company, a wholesale purchaser-reseller (10 C.F.R. § 211.51), to determine compliance with the mandatory allocation and pricing regulations of the FEA.[2]

Appellant's brief states:

"The issues presented for review by the court are:

"1. Whether Bell Oil Company was properly made a party to this action?

"2. Whether the subpoena sought to be enforced was issued for an improper purpose, in bad faith, for the purpose to harass the respondent to penalize respondent for having exercised his constitutional right of free speech and his right to petition the Government for redress of

---

* Mr. Stanley D. Rose died after the submission of the case but before this opinion was filed.

1. Jurisdiction of this action is based upon § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751, et seq. (Allocation Act), incorporating by reference § 206 and § 211 of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 n. (Stabilization Act), and upon § 13(e)(2) of the Federal Energy Administration Act of 1974, 15 U.S.C. § 762, et seq. (FEA Act).

The CFR sections referred to are regulations promulgated by the FEA under authority of the FEA Act. At the time the subpoena was issued, what is now 10 C.F.R. § 205.201(a) was § 205.200 and it provided that:

The FEA may, in its discretion, initiate investigations relating to compliance by any person with any rule, regulation, or order promulgated by the FEA, any decree of court relating thereto, or any other agency action. The FEA encourages voluntary cooperation with its investigations. When the circumstances warrant, however, the FEA may issue subpoenas in accordance with and subject to § 205.8. The FEA may conduct investigative conferences and hearings in the course of any investigation in accordance with Subpart M of this part.

39 F.R. 35472 (Oct. 1, 1974). See, 2 CCH Energy Management ¶ 13,400 note .05, p. 13,300. Section 13(b) of the FEA Act provides:

All persons owning or operating facilities or business premises who are engaged in any phase of energy supply or major energy consumption shall make available to the Administrator such information and periodic reports, records, documents, and other data, relating to the purposes of this act, including full identification of all data and projections as to source, time, and methodology of development, as the Administrator may prescribe by regulation or orders as necessary or appropriate for the proper exercise of functions under this act.

2. Including 10 C.F.R. §§ 210, 211, 212.

grievances as guaranteed by the First Amendment, to obtain records already in possession of the Federal Energy Administration and to obtain records pertaining to the retailing of gasoline?

"3. Whether 10 C.F.R. §§ 205.200, 205.202 and 210.92 are valid?" (Br. 1)

Plaintiff-appellees' brief states the issue as follows:

"1. Did the District Court err in finding that a subpoena issued by the Federal Energy Administration (FEA) requiring appellant Louis K. Bell to produce records of Bell Oil Company necessary for a full price audit of that Company by the FEA should be judicially enforced in that it called for documents relevant to the jurisdiction of the FEA, was reasonable in scope and as to place and time of production, was not issued solely for harassment, did not constitute an unreasonable search and seizure, would not deprive appellant of property without due process of law, and called for documents the production of which would not appreciably interfere with the operation of appellant's business?" (Br. 1, 2)

Appellant argues that Bell Oil Company (also herein referred to as Bell Oil) is not a proper party to this action; that the subpoena was issued for an improper purpose, in bad faith for the purpose of harassment; and that the regulations governing the FEA investigations, 10 C.F.R. §§ 205.200, 205.202, and 210.92, are invalid. Appellant requests this court to reverse the order and judgment of the trial court enforcing the subpoena, to "dismiss Bell Oil Company as a party to this action, to quash enforcement of the subpoena," and "to rule that the cited regulations are invalid." [Appellant's Brief (Apt.'s Brf.) 19–20]

In the early part of 1974, the FEA predecessor, the FEO, received complaints regarding appellant's compliance with the pricing and allocation regulations. On April 16, 1974, IRS Agent Whaley[2a] con-tacted Mr. Bell by telephone regarding an alleged violation of the "rent, price, and allocation" regulations. (R. 133, T. 169). FEA Investigator Caton, in closing a spot check investigation based on the same complaint, reported that "Without any specific reference to a particular customer by the complainant, the tie-in allegation could not be fully investigated without a comprehensive audit of Bell Oil Company and Bell Auto Supply Company books. Even then, a complete audit might not reveal any such tie-in, if it was present. . . ." (R. 138). Investigator Metts' April 1975 report to the South Carolina area manager regarding another pricing complaint recommended that "a complete audit of Bell Oil Company records be conducted. . . ." (R. 65–67).

Following a series of intra-FEA communications, the South Carolina area manager contacted Mr. Bell, on June 18, 1975, and scheduled an appointment for July 7 for two of the investigators to inspect Bell Oil Company records. (R. 63, 74). The appointment was postponed at the written request of Bell's attorney, Cooney (R. 75). After numerous communications between Cooney and the FEA, Cooney requested a subpoena from the FEA on July 2, 1975. On July 17, 1975, he again wrote the FEA and requested a subpoena in the matter of ". . . Louis K. Bell, Bell Oil Company, # 460–L–60131." (R. 87). The subpoena was issued on July 24, 1975.

On August 2, 1975, appellant's attorney, Cooney, filed an appeal application with the Administrator, Federal Energy Administration, captioned "In re: Louis K. Bell, President, Bell Oil Company," requesting that the subpoena be quashed or, in the alternative, modified by making it returnable at 2034½ Savannah Road, Augusta, Georgia (the principal place of business of Bell Oil Company), "on the grounds that to comply with the subpoena in its present form would work an extreme hardship upon Bell Oil

**2a.** At that time, pursuant to Executive Order 11748 dated December 26, 1973, preliminary investigations for the FEA (then the Federal Energy Office) were performed by IRS agents, who would then recommend to the FEA whether further investigation was necessary. (T. 24, 25 and fn. 5, infra).

Company." (R. 12–13). On August 26, 1975, the Regional Administrator issued an order upholding the subpoena but granting appellant's alternative request for modification and ordered the subpoena returnable at Bell Oil's office in Augusta, Georgia, on September 8, 1975 (R. 14–15).

After appellant failed to honor the subpoena on the appointed date, the FEA filed a petition for enforcement against "Louis K. Bell, President, Bell Oil Company" in the United States District Court for the Southern District of Georgia, on November 4, 1975 (R. 1). After a full hearing on the petition for enforcement of the subpoena, the trial court entered the enforcement order in controversy on April 4, 1977.

The opinion of this court in *United States v. Empire Gas Corporation*, 547 F.2d 1147 (Em.App.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1326, 57 L.Ed.2d 592 (March 7, 1977), establishes the authority of the FEA to issue the subpoena involved in this case to compel the appearances of witnesses and the production of documents and records relating to the cost, pricing, and allocation of petroleum products.

Appellant's first argument, that "Bell Oil Company is not a proper party to this action," is grounded on the contention that Bell Oil was not properly named or served as a party in the subpoena nor in this action. Although appellant's attorney argued in the trial court that the subpoena issued to "Mr. Louis K. Bell, President, d/b/a Bell Oil Company" required an individual to produce corporate records of Bell Oil Company and that "[t]he subpoena properly drawn . . . would have been directed to Louis K. Bell as President of Bell Oil Company to produce Bell Oil Company records" (T.F.F.C.L. 8a),[3] the trial judge stated:

Well, my finding is that as president of this corporation, if he still is president, I would find that the documents are sufficiently within his dominion and control to

produce them if he otherwise is required to produce them. [T.F.F.C.L. 8a]

As the trial judge noted, appellant's response had been that Bell had refused to produce the records, not that he did not have them. Bell was also treasurer of Bell Oil and admittedly had custody of the records.[4]

The evidence in the record clearly shows that Bell Oil Company had notice of and participated through its president and counsel in the subpoena proceedings in the FEA and in the courts and that it received a favorable ruling on the modification of the subpoena making it returnable at the company's place of business. Indeed, in the certificate required by TECA Rule 21(c), appellant's attorney certified that Louis K. Bell and Bell Oil Company constituted a full and complete list of the parties in the action. Also, appellant's attorney signed the brief as "Counsel of Record for Louis K. Bell and Bell Oil Company." (Apt's. Brf. i–ii)

Under all the circumstances in this case, Bell Oil Company is bound by the subpoena and the order of the District Court enforcing it. *Bros, Inc. v. W. E. Grace Mfg. Co.*, 261 F.2d 428 (5th Cir. 1958). It would be elevating "form over substance" (T.F.F.C.L. 8a), see *Infotronics Corporation v. Varian Associates Corp.*, 45 F.R.D. 91, 92 (S.D.Tex. 1968), citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed. 80 (1957), and see *McCarthy v. Langston*, 23 F.R.D. 249 (N.D. Fla.1959), to invalidate the subpoena served on Bell Oil's president, treasurer, and director.

Appellant's second argument, that the subpoena was issued for an improper purpose and that its enforcement would constitute an abuse of the court's process, is without merit. The burden is on appellant to demonstrate any such abuse. *United States v. Powell*, 379 U.S. 48, 55, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Donaldson v.*

---

3. See, Discussion, Transcript (T.) 4–9, 47–52, and Transcript of Findings of Fact and Conclusions of Law (T.F.F.C.L.) 6a–8a.

4. Mr. Bell had testified that as treasurer of the company he had custody of the records (T. 203).

*United States*, 400 U.S. 517, 527, 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971); *United States v. McCarthy*, 514 F.2d 368, 372 (3d Cir. 1975).

Appellant contends that *Powell, supra*, an IRS subpoena enforcement case, should be applied to require the FEA to show not only (1) that the investigation was conducted pursuant to a legitimate purpose and (2) that the inquiry was relevant to that purpose, but also (3) that the FEA does not already possess the information and (4) that the required administrative steps have been followed. To require these two additional elements of proof would restrict the broad and necessary powers of enforcement conferred on the FEA by Congress and the President under the Emergency Petroleum Allocation Act and Federal Energy Administration Act. There is a critical difference between the procedures necessary for obtaining essential facts for enforcing the Allocation Act and obtaining such facts for enforcing the Internal Revenue Code. Under the latter, annual statements (tax returns) are required to furnish the information. Indeed, application here of the very different Internal Revenue Code enforcement procedures would defeat the Congressional call for "prompt action by the Executive Branch of Government" in Section 2(a) of the Allocation Act in achieving a goal of the Act, i. e., "equitable distribution of crude oil . . . and petroleum products at equitable prices among all regions and areas of the United States and sectors of the petroleum industry . . .." Section 4(b)(1)(F) of the Allocation Act.

The Fifth Circuit did not find it necessary to require the third and fourth elements of proof regarding nonpossession of the information and compliance with administrative steps when deciding that the Secretary of Agriculture "must show that the investigation is for a lawful purpose and that the materials are relevant to it." *United States v. Security State Bank and Trust*, 473 F.2d 638, 641 (5th Cir. 1973).

In *United States v. Empire Gas Corp., supra*, this court decided that *Oklahoma Press v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1945), had settled the point that it was enough "that the investigation be for a lawfully authorized purpose within the power of Congress to command" and that *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943), would require the district court to enforce an agency subpoena if the evidence sought was not "plainly incompetent or irrelevant to any lawful purpose." On the basis of *United States v. Empire Gas, supra*, this court directed that an FEA subpoena be enforced in *United States v. Fredeman*, 547 F.2d 1156, 1157 (Em.App.1977), *cert. denied*, 431 U.S. 915, 97 S.Ct. 2176, 53 L.Ed.2d 225 (May 16, 1977), after finding that the subpoena was "issued for a lawfully authorized purpose" and was "in all respects lawful and proper and should be enforced."

■ After the government had proved that the investigation was for a lawful purpose and that the evidence sought in the subpoena was relevant to the investigation, the district court correctly ruled that "a *prima facie* case has been established with respect to the issuance of the subpoena and the refusal of the respondent to comply with it." (T. 52)

Bifurcation of the power, on the one hand of the agency to issue subpoenas and on the other hand of the courts to enforce them, is an inherent protection against abuse of subpoena power. *United States v. Security State Bank and Trust, supra*, at 641.

The record establishes that at all material times, officers and agents of the FEA were attempting in the course of their authorized duties to obtain information from appellant regarding price and cost data to determine compliance with FEA Regulations, 10 C.F.R. Parts 210, 211, 212.[5] On its face, the

---

5. Section 13(e)(1) of the FEA Act and Executive Order 11790, 39 F.R. 23185, permit the Administrator or any of his duly authorized agents to issue subpoenas. Section 5(a)(1) of the Allocation Act, incorporating Section 206 of the Stabilization Act, and Section 5(b) of the

Allocation Act authorize the head of the agency or any of his duly authorized agents to sign and issue subpoenas. See, 10 C.F.R. § 205.8 to the same effect; F.R.Ev. 902, Self-authentication; R. 4–5; and T. 46, 145, 165.

subpoena shows that it was a "Subpoena" of the "The Federal Energy Administrator" signed by Frederic Johnson, "Regional Administrator," and bore the seal of the Federal Energy Administration. In fact, appellant called Johnson as a witness and, without questioning his authority, proved that he had issued the subpoena as Regional Administrator. (T. 145) Moreover, we take judicial notice of Delegation Order No. 5, CCH FEA Compliance Manual ¶ 51,406, in which the FEA Administrator confers subpoena authority upon the Regional Administrator. F.R.Ev. 201. See 1 Weinstein's Evidence ¶ 201[06] (1975), 21 Federal Practice and Procedure, Wright and Graham, § 5110 (1977).

The information sought by the subpoena was clearly relevant and necessary for a complete pricing audit. (T. 10–11, 21–22) The subpoenaed records pertained to the period May 1, 1973 through June 30, 1975. The records for May 15, 1973, the base price date (T. 75, 81, 93, 95), are essential in determining compliance with the pricing and allocation regulations, see e. g., *United States v. Empire Gas Corp., supra; Longview Refining Co. v. Shore,* 554 F.2d 1006 (Em.App.1977), *cert denied,* —— U.S. ——, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). Furthermore, the district court found:

> The face of the subpoena reflects that documents of Bell Oil Company relating to pricing of petroleum products by it are called for production. The court finds that these documents are relevant to the jurisdiction of the Federal Energy Administration. Although they may be voluminous as called for, such documents appear to be relevant to the subject matter of the jurisdiction of the Federal Energy Administration. (T.F.F.C.L. 3a).

Appellant cites opinions of this court in *Shell Oil Co. v. F.E.A.,* 527 F.2d 1243 (Em.App.1975), and *Atlantic Richfield Co. v. Zarb,* 532 F.2d 1363 (Em.App.1976), in support of the argument that the district court erred in granting enforcement of the por-

tion of the subpoena calling for production of "[a]ll lease records in effect during the period May 1, 1973 through June 30, 1975." (R. 5; Apt. Br. 17–18). Neither of these decisions precludes the FEA from obtaining production of lease records to ascertain facts potentially relevant to the pricing or allocation of petroleum products.

As this court noted in *Shell Oil Co. v. F.E.A.,* supra at 1246–1247 (Em.App.1975),

> FEA, under its own regulations, 10 C.F.R. § 210.62(c), prohibits "[a]ny practice which constitutes a means to obtain a price higher than is permitted by the regulations in this chapter. . . ." Thus, in any instance in which the FEA believes a lessor who supplies gasoline to its lessee has raised its rents as a means of obtaining a higher price for its gasoline than would otherwise be allowed, the FEA could effectively compel the lessor to substantiate the increased rentals by bringing an action to enforce 10 C.F.R. § 210.62(c).

Mr. Bell testified that there were rental allowance arrangements with Russ-Dyches (T. 171) and Twilley (T. 182) and that he told Investigator Dobbs there was a special agreement tied to Fleet Transport's lease permitting purchase of diesel fuel from Bell Oil Company at one-half cent per gallon over cost. (T. 175)

■ Since the government made its preliminary showing in support of the subpoena, the burden of proving abuse of the court's process rests on appellant. *United States v. Powell, supra; United States v. McCarthy, supra.* As regards appellant's point that pertinent records should have been examined on a previous trip to Bell Oil Company, the Supreme Court has held that the burden of establishing abuse of the court's process was not satisfied by showing "that the records in question have already been once examined." *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255. There is no arbitrary limit to the number of trips which the FEA investiga-

tors may make to a given company. It is not for Bell to choose the records the FEA examines or to second-guess the FEA's decision with respect to whether it has obtained all information needed to meet its statutory mandate to determine compliance.

Appellant's claim of harassment and penalization by the FEA by reason of Bell's communications with members of Congress criticizing the FEA is without substance. The earlier spot check investigation by the FEA's predecessor, the FEO, negates any connection between the FEO's/FEA's investigatory efforts and Bell's subsequent criticism of the agency. These spot checks revealed that a complete pricing and allocation audit was necessary to obtain the information required to determine compliance by Bell Oil with the regulations.

 Appellant's argument that requiring it to compile and produce the subpoenaed records is harassment justifying non-compliance must be rejected.[6] The trial court specifically found that "the documents called for in the subpoena are not presently needed for the reasonable operation of Bell Oil Company" (T.F.F.C.L. 3a) and that "production of these documents will not appreciably interfere with the operation of Bell Oil Company's business" (T.F.F.C.L. 4a). Since the subpoena as modified requires the FEA to inspect documents at appellant's place of business, the burden of production is substantially reduced. In *United States v. Empire Gas Corp., supra,* at 1154, this court quoted with approval the district court's analysis:

> [R]espondents' [appellants'] assertion of the burden inherent in providing the subpoenaed documents and the resulting interruption of Empire's business operations fails to demonstrate a deprivation of due process of law, particularly in view of petitioners' [appellees'] willingness to

make inspection of the documents at Empire's headquarters and make copies of any materials necessary for completion of the audit.

No showing has been made that production of records required to be kept and made available for inspection [7] would constitute a deprivation of due process or an abuse of judicial process.

 The Fourth Amendment challenge brought by appellant is adequately answered by the district court's Findings of Fact 8 and 9:

> [T]he subpoena as modified, requiring the production of the documents of Bell Oil Company at its place of business in Augusta, Georgia, is, the court finds, reasonable in scope and reasonable as to place and time of production. The court further finds that it was not issued for the sole purpose of harassment. The court finds that enforcement of the subpoena does not constitute an unreasonable search and seizure under the Constitution and laws of the United States.

When the scope of the subpoena in *United States v. Empire Gas Corp., supra,* was challenged, this court noted that the "information sought relates to the appellants' prices, costs, sales, purchases and receipts and is unquestionably relevant." *United States v. Empire Gas Corp., supra,* at 1154. The same is true of the similar information sought by the subpoena in this case.

 By isolating the court's statement in its Finding of Fact 8 that the subpoena "was not issued for the *sole* purpose of harassment" (emphasis added), appellant would improperly imply that the court found *a* purpose of harassment (T.F.F.C.L. 3a). In *Shasta Minerals and Chemical Co. v. Securities and Exchange Commission,* 328 F.2d 285 (10 Cir. 1964), cited by appellant,

---

**6.** It is anomalous that appellant contends on the one hand that the FEA has had ample opportunity to inspect all necessary records and on the other hand that to compile the subpoenaed records would "require the entire work force of six employees to spend two to three weeks just to assemble the subpoenaed documents" (Apt. Brf. 15–16; T. 62–63).

**7.** See 10 C.F.R. § 210.92(a) requiring firms to keep records sufficient to demonstrate that prices charged for the amount sold are in compliance with the regulations and 10 C.F.R. § 210.92(b) requiring that those records shall be made available for inspection. Also, see § 13(b) of the FEA Act.

systematic harassment by the S.E.C. was alleged in the affidavits, the truth of which the agency admitted for purposes of summary judgment. The crucial distinction between *Shasta* and the instant case is that in the case *sub judice* the trial court determined that the subpoena should be enforced after a full hearing, thereby foreclosing appellant's harassment and other defenses.

Appellant has not sustained the burden of showing that 10 C.F.R. §§ 205.200, 205.202, and 210.92 are invalid. *Condor Operating Co. v. Sawhill*, 514 F.2d 351, 359 (Em.App. 1975), *cert. denied* 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975), *Pasco, Inc. v. Federal Energy Administration*, 525 F.2d 1391, 1402 (Em.App.1975), *Texaco, Inc. v. Federal Energy Administration*, 531 F.2d 1071, 1077 (Em.App.1976), *cert. denied* 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). In the first place, appellant inaccurately paraphrases § 13(d) of the FEA Act and as a result misunderstands the clear meaning of that section.[8] Title 10 C.F.R. § 210.92(b) is not in conflict with § 13(d) of the FEA Act. The "reasonable times" and "reasonable manner" requirements of § 13(d) of the FEA Act apply only to the Administrator's power to conduct physical inspections at energy facilities and business premises; it does not apply to his power to inspect and copy records, reports, and documents. Appellant also claims the invalidity of 10 C.F.R. § 210.92(b) on the ground that it conflicts with § 6 of the Administrative Procedure Act, 5 U.S.C. § 555(d), but that section is excluded from the operation of the FEA by § 5(a)(1) of the Allocation Act, incorporating § 207 of the Stabilization Act.[9]

■ Just as 5 U.S.C. § 555(d) does not invalidate 10 C.F.R. § 210.92(b), it does not invalidate 10 C.F.R. § 205.200(c),[10] which appellant challenges because that section does not require the FEA to notify the subpoenaed party of the relevance of subpoenaed documents. Title 10 C.F.R. § 205.-202(c)[11] cannot be invalidated due to any

---

**8.** Page 18 of the appellant's brief states:

> Section 13(d) of the Federal Energy Administration Act of 1974, 15 U.S.C. § 772(d), permits the Administrator to conduct investigations and, in connection therewith, *to conduct at reasonable times and in a reasonable manner, to inspect and copy records, reports and documents.*

Accurately, § 13(d) of the FEA Act provides:

> The Administrator, to verify the accuracy of information he has received or otherwise to obtain information necessary to perform his function under this chapter, is authorized to conduct investigations, and in connection therewith, *to conduct at reasonable times and in a reasonable manner, physical inspections* at energy facilities and business premises, *to inventory* and sample any stock or fuels or energy sources therein, *to inspect and copy* records, reports, and documents from which energy information has been or is being compiled, and *to question* such persons as he may deem necessary. (Emphasis added.)

Title 10 C.F.R. § 210.92(b) provides:

> Records required to be kept under paragraph (a) shall be made available for inspection at any time upon the request of a representative of the FEO [FEA].

**9.** Section 207 of the Stabilization Act deals with administrative procedure, and Section 207(a) provides:

> The functions exercised under this title are *excluded* from the operation of subchapter II of chapter 5, and chapter 7 of Title V, United States Code, except as to the requirements of §§ 552, 553, and 555(e) of Title V, United States Code. (Emphasis added.)

**10.** At the time the subpoena was issued, 10 C.F.R. § 205.200(c) read as follows:

> (c) Notification. Any person who is under investigation by the FEA in accordance with this section and who is requested to furnish information or documentary evidence shall be notified as to the general purpose for which such information or evidence is sought.

Section 205.200 was redesignated Section 205.-201 in 21 F.R. 36646 (Aug. 31, 1976). *See*, 2 CCH Energy Management ¶ 13,400, note .05, p. 13,300.

**11.** Also, 10 C.F.R. § 205.202(c) at the relevant time provided:

> (c) *Civil penalties.*
> (1) Any person who violates any provision of this chapter or any order issued pursuant thereto shall be subject to a civil penalty of not more than $2,500 for each violation. Actions for civil penalties are prosecuted by the Department of Justice upon referral by the FEA.
> (2) When the FEA considers it to be appropriate or advisable, the FEA may compromise and settle and collect civil penalties.

39 F.R. 35472 (Oct. 1, 1974). In 41 F.R. 36646 (Aug. 31, 1976), section 205.202 was redesignated 205.203. *See*, 2 CCH Energy Management ¶ 13,402.30, note .05, p. 13,303.

conflict with an inapplicable section of the APA.

 Finally, appellant argues that 10 C.F.R. § 210.92 conflicts with 10 C.F.R. § 207.3(f) because "the former regulation does not require the inspection to be at reasonable times and in a reasonable manner, whereas the latter regulation requires inspections at reasonable times and in a reasonable manner." (Apt. Brf. 19) The regulations are not in conflict because 10 C.F.R. § 207.3(f) provides that *the Administrator* or his designated representative "*may* inspect, at reasonable times and in a reasonable manner . . .," whereas 10 C.F.R. § 210.92 requires *firms to make* the records *available* for inspection "at any time upon request (emphasis added)." Certainly, any inconsequential difference in verbiage in the regulations should not thwart the Congressional direction for "prompt action" by the agency in § 2(a) of the Allocation Act.

[11] The district court correctly concluded that it was not necessary "to rule upon the validity of the various regulations of the Federal Energy Administration as contained in the Code of Federal Regulations, but insofar as a ruling on any such regulation is necessary to enforce the subpoena, any such regulation is not invalid for any reason assigned." (T.F.F.C.L. 4a). *United States v. Empire Gas Corp., supra*, held that

it is unnecessary for a court to determine the validity of a regulatory scheme prior to issuing an order enforcing an agency subpoena. The regulations challenged in this case are inextricably woven into the regulatory scheme which need not be determined valid prior to enforcing an administrative subpoena.

In *United States v. White*, 322 U.S. 694, 700–701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944), the Supreme Court stated:

> Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws . . .

The Federal Energy Administration subpoena, as modified, was lawfully authorized, was issued for a proper purpose, sought relevant information, is binding upon Bell Oil Company, and should be promptly enforced.[12] The order of the District Court is affirmed.

IT IS SO ORDERED.

---

12. In *Bray v. United States*, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215, 217 (1975), the Supreme Court recognized the high priority

Congressional policy calling for "speedy resolution of cases brought under the [Stabilization] Act."