UNITED STATES of America and Harold Clements, II, Acting Regional Counsel Department of Energy, Petitioners-Appellees,

v.

FIRST CITY NATIONAL BANK OF EL PASO, TEXAS, Defendant-Appellant,

J. R. Adams, Intervenor-Appellant.

No. 5–33.

Temporary Emergency Court of Appeals.

Submitted Feb. 12, 1979.

Decided March 5, 1979.

---

Timothy J. Herman, Rogers, Hughes & Herman, Austin, Tex., was on the brief for defendant-appellant.

Eloise E. Davies, Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and Jamie C. Boyd, U. S. Atty., San Antonio, Tex., were on the brief for petitioners-appellees.

Before ESTES, JOHNSON and GEWIN, Judges.

PER CURIAM:

On the basis of a complaint filed by the Salt River Project,[1] the Federal Energy Administration (FEA), on March 31, 1975, began a civil investigation of J. R. Adams to determine whether amounts Adams received for the sales of certain covered petroleum products were in compliance with applicable pricing regulations.[2] The investigation was assigned Category A status, indicating a high investigative priority and allowing the agency to combine three separate cases into one.[3] The FEA began negotiating with Kevin Hayes, an attorney representing J. R. Adams, for information concerning the investigation; and on November 15, 1977, Hayes tendered to the agency certain checks written by Adams.[4] From these checks, which had been deposited in the Southwest National Bank of El Paso (now First City National Bank of El Paso), the FEA obtained the names and account numbers of James Cardwell and Gilbert R. Russell.[5]

The Department of Energy (DOE) took the statement of J. R. Adams, the subject of the investigation, in January, 1978.[6] On January 9, 1978, Cardwell and Russell testified before the DOE that they had received from Adams the checks which Hayes had tendered to the FEA in November, 1977,[7] and that these checks represented finder's fees "developed out of a profit margin that Mr. Adams charged."[8]

A subpoena duces tecum "[i]n a matter before the Department of Energy concerning J. R. Adams et al," was subsequently issued to the Southwest National Bank at El Paso, Texas, on March 8, 1978, requiring testimony and production of documents before the DOE on March 23, 1978, at Dallas, Texas. The Schedule of Documents Requested contained five paragraphs requesting records of various transactions of Cardwell and Russell:

1. Documents in your possession that contain records of transactions in the following numbered accounts—

    58–03–144
    13–11–336

    during the period December 1973 through December 1974.

2. Cashiers checks or Bank Money Orders purchased by either—.

    James Cardwell or
    Gilbert R. Russell

    during the period December 1973 through December 1974.

3. Signature cards for all accounts maintained in your bank by James Card-

---

1. Appellant's Brief (Apt.'s Br.) 7.

2. Transcript (T.) 9, 10, 14. Unless otherwise noted, all references to the transcript are to testimony before the District Court of Harold R. Clements, II, deputy regional counsel for the Department of Energy (DOE), Region 6, Dallas, Texas.

3. T. 9–10. Also under investigation were Consolidated Materials, Robert Vale, CLB, Stonewalker Corp., and OKC. T. 21–22.

4. T. 10–11.

5. T. 11.

6. T. 41.

7. T. 11.

8. T. 44.

well or Gilbert R. Russell, individually or jointly, during the period December 1973 through December 1977.

4. Any Safe Deposit Box contract entered into with either James Cardwell or Gilbert R. Russell, or both of them, and in force during the period December 1973 through December 1977, or any portion of that time period.

5. Entry records for the Safe Deposit Boxes described in item 4 above and for the time periods in item 4.

On March 15, 1978, the Bank tendered, through its senior vice-president/cashier, Jim M. McVay, the ledger sheets for the accounts in question for the period December 1973–December 1974, as well as the requested signature cards.[9] However, the Bank did not provide any of the remaining documents requested in the subpoena duces tecum.[10] DOE subsequently requested certain checks from the two accounts.[11] The Bank refused to comply with DOE's request in the absence of a separate subpoena for the checks.[12]

On July 12, 1978, the United States of America and Harold R. Clements, II filed a petition in the United States District Court for the Western District of Texas, El Paso Division, seeking to enforce the subpoena of March 8, 1978. An amended subpoena was issued to the Bank on October 6, 1978, returnable October 25, 1978. The amended subpoena sought the same documents and contained only very minor differences: the heading read, "In a matter before the Department of Energy concerning the DOE investigation of transactions in covered petroleum products by J. R. Adams and others, and the distribution of proceeds of the transactions," and the subpoenaed party was "First City National Bank, successor to Southwest National Bank." The Schedule of Documents Requested was identical to that attached to the original subpoena.

The District Court held an evidentiary hearing on November 2, 1978, in which counsel for J. R. Adams was allowed to participate as a defendant-intervenor. On November 17, 1978, the District Court entered an order enforcing all paragraphs of the subpoena except that requiring production of the signature cards.[13] The Appellant-Bank filed its notice of appeal to this court on December 8, 1978.

The appellant, First City National Bank of El Paso (Bank), presents the following issues for review by this Court:

1. Is the subpoena issued by DOE requiring appellant First City National Bank to produce certain documents relating to James A. Cardwell and Gilbert R. Russell violative of the Bank's Fourth Amendment guarantees against unlawful search and seizure and did the District Court err in ordering compliance with Paragraphs 1, 2, 4 and 5 of said subpoena, particularly in the absence of an order of investigation or resolution setting forth the nature, purposes and scope of the agency's inquiry?

2. Assuming, *arguendo*, that the purpose and scope of the investigation deals with unlawful profit margins on sales of product by J. R. Adams, are the documents sought irrelevant and incompetent to any such inquiry?

3. Did the Appellant Bank, by virtue of its March 15, 1978 tender of documents, comply with Paragraph 1 of the "Schedule of Documents Requested" attached to the involved subpoena?

4. Did the issuance by DOE of an amended subpoena, seeking the same documents, supersede and render unenforceable the involved subpoena?[14]

The DOE, however, states the issue as follows:

---

**9.** T. 16, 23, 52. Apt.'s Br. 2. T. 52 contains testimony of Jim M. McVay, senior vice-president/cashier of the Bank.

**10.** T. 23.

**11.** T. 49, testimony of Mr. McVay.

**12.** Ibid.

**13.** The signature cards were furnished at the same time as the ledger sheets. See n.9, *supra*.

**14.** Apt.'s Br., 1–2.

Whether the district court correctly ordered the First City National Bank to comply with the Department of Energy's subpoena.[15]

The Bank argues that the absence in the subpoena of an order of investigation or other standard by which relevance can be determined constitutes a violation of the Fourth Amendment guarantee of freedom against unreasonable search and seizure; that documents from the accounts of Cardwell and Russell are incompetent and irrelevant with respect to amounts received by J. R. Adams from the sale of petroleum products; that its tender of all ledger sheets for the two accounts in question for the period December 1973–December 1974 satisfies paragraph 1 of the subpoena; and that the October 6, 1978 subpoena superseded the subpoena of March 8, 1978. The Bank requests that this court reverse the District Court's order enforcing the subpoena and render judgment in its favor, or alternatively, reform the District Court's order to delete enforcement of paragraph 1 of the subpoena.

The administrative subpoena involved in this case recites that it was issued by the DOE "under the authority of § 206 of the Economic Stabilization Act of 1970, as amended, incorporated by § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, as amended; § 13 of the Federal Energy Administration Act of 1974; §§ 645

and 705 of the Department of Energy Organization Act and 10 CFR § 205.8 and § 205.201."

The DOE's subpoena authority under the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 751 et seq. (EPAA), and the Federal Energy Administration Act of 1974, 15 U.S.C. § 761 et seq. (FEA Act), is discussed in detail in this Court's decision in *United States v. Empire Gas Corp.*, 547 F.2d 1147 (Em.App.1976), and *United States v. Bell Oil Co.*, 564 F.2d 953 (Em.App.1977).[16] Congress broadened this authority in § 645 of the Department of Energy Organization Act, 42 U.S.C. § 7101 et seq. (DOE Act), by providing that:

> For the purpose of carrying out the provisions of this Act, the Secretary, or his duly authorized agent or agents, shall have the same powers and authorities as the Federal Trade Commission under § 9 of the Federal Trade Commission Act with respect to all functions vested in, or transferred or delegated to, the Secretary or such agents by this Act. . . .

Section 9 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 49, authorizes the FTC "to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation."

■ The Bank cites the fact that J. R. Adams, rather than Cardwell or Russell, is

---

**15.** Appellee's Brief (Apl.'s Br.) 1.

**16.** § 5(a)(1) of the EPAA, which incorporates § 206 of the Economic Stabilization Act of 1970, as amended. 12 U.S.C. § 1904 note, authorizes

> [t]he head of an agency exercising authority under this title, or his duly authorized agent . . . for any purpose related to this title, to sign and issue subpoenas for the attendance and testimony of witnesses and the production of relevant books, papers, and other documents, and to administer oaths.

Section 13(b) of the FEA Act of 1974 requires [a]ll persons owning or operating facilities or business premises who are engaged in any phase of energy supply or major energy consumption [to] make available to the Administrator such information and periodic reports, records, documents, and other data, relating to the purposes of this chapter.

Section 13(e)(1) of the same Act empowers [t]he Administrator, or any of his duly authorized agents . . . to require by subpoena the attendance and testimony of witnesses, and the production of all information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence which the Administrator is authorized to obtain pursuant to this section.

The regulations promulgated pursuant to these statutes authorize the FEA (now DOE) to "initiate investigations relating to compliance by any person with any rule, regulation, or order promulgated by the FEA . . .," 10 CFR § 205.201(a) and to "sign and issue subpoenas . . . upon an adequate showing that the information sought will materially advance the proceedings . . ." 10 CFR § 205.8(a).

the target of DOE's investigation. However, decisions under § 9 of the FTC Act, which § 645 of DOE Act parallels, make it clear that "this section authorizes the Commission to subpoena documentary evidence from parties *not* the subject of an investigation or proceeding." *F.T.C. v. Cockrell*, 431 F.Supp. 561, 563 (D.D.C.1977) (Emphasis in original); *F.T.C. v. Tuttle*, 244 F.2d 605 (2d Cir. 1957), cert. denied 354 U.S. 925, 77 S.Ct. 1379, 1 L.Ed.2d 1436; *F.T.C. v. Rockefeller*, 441 F.Supp. 234 (S.D.N.Y.1977). Clearly then, the DOE was within its authority in issuing a subpoena to the Bank in order to obtain records from the accounts of Cardwell and Russell for use in the investigation of J. R. Adams.

This Court's decision in *United States v. Empire Gas, supra*, recognized as the legal standard applicable in subpoena enforcement proceedings the holding of *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1945), that "[i]t is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command." The DOE's investigation of Adams' profit margin from the sale of certain covered products has a lawfully authorized purpose under the EPAA, FEA Act, DOE Act and applicable regulations.[17] The subpoena in question was issued under the same rules and regulations as the subpoenas enforced by this Court in *United States v. Empire Gas, supra*, and *United States v. Bell Oil Co., supra*, and shows on its face that it concerned a specific investigation by the DOE.

■ Referring to the permissible scope of agency inquiry, the Supreme Court in *Oklahoma Press Publishing Co., supra* at 208, 66 S.Ct. at 505, stated that "[t]he gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable." Thus an otherwise lawful subpoena will be enforced if the requested information is reasonably relevant to the investigation. *United States v. Morton Salt*

*Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1949). This standard of reasonable relevance does not, however, require a showing of specific need for the information. *F.T.C. v. Texaco, Inc.*, 180 U.S.App. D.C. 390, 555 F.2d 862 (1977), cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072.

■ From cancelled checks written by J. R. Adams, the target of the investigation, to Cardwell and Russell, the DOE learned of finder's fees paid by Adams on the basis of his profit margin. The DOE subsequently subpoenaed the Bank to produce records from the accounts of Cardwell and Russell "in a matter concerning J. R. Adams et al." The subpoena was issued for the lawfully authorized purpose of investigating profit margins from sales of covered products. The information requested related to the matter under investigation and was, therefore, relevant under *Oklahoma Press Publishing Co., supra; F.T.C. v. Rockefeller, supra*. The statutes and regulations under which this subpoena was issued require no order of investigation or statement of purpose from which the relevance of the requested information can be determined. It is sufficient that relevance can be determined from the face of the subpoena. *United States v. Bell, supra*. The subpoena is not violative of any Fourth Amendment guarantees and is in all respects lawfully authorized and issued.

■ This Court's statement in *United States v. Bell Oil Co., supra*, at 961, that

[i]t is not for Bell to choose the records the FEA examines or to second-guess the FEA's decision with respect to whether it has obtained all information needed to meet its statutory mandate to determine compliance,

answers the Bank's contention that it complied with paragraph 1 of the subpoena by tendering all ledger sheets for the two accounts in question. At the evidentiary hearing, DOE Acting Regional Counsel, Ha-

---

17. See, e. g., § 5(b), EPAA; § 5, FEA Act; §§ 301(a), 641, 645, 705, DOE Act; and 10 CFR Part 205.

rold Clements, II, testified that the ledger sheets reflected only deposits and withdrawals for the particular accounts.[18] Consequently, the only way for the DOE to learn more about certain transactions would be to receive copies of the checks. The District Court found such a request to be within the scope of paragraph 1 of the subpoena,[19] and such finding is not clearly erroneous. See *F.T.C. v. Texaco, supra,* 180 U.S.App.D.C. at 404 n.29, 555 F.2d at 876 n.29 (1977).

The Bank's argument that the second subpoena, which merely made a correction to reflect the Bank's change of name, superseded the original subpoena has been properly characterized as hypertechnical.[20] In *United States v. Bell Oil Co., supra* at 958, this Court stated that so long as the proper party is identifiable, a mistake in name is not fatal and that to hold otherwise would be to elevate "form over substance," citing *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Bank suffered no prejudice as a result of the mistake in name, and in all other respects the second subpoena was identical to the first.

The Court's role in a subpoena enforcement proceeding is necessarily a limited one. Challenges other than those based on agency authority and relevance of requested information generally are not defenses in such a proceeding. The Supreme Court in *Endicott-Johnson v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943) (footnote omitted), observed that the petitioner

> advanced many matters that are entitled to hearing and consideration in its defense against the administrative complaint, but they are not of a kind that can be accepted as a defense against the subpoena.

See *F.T.C. v. Texaco, supra,* 180 U.S.App. D.C. at 407, 555 F.2d at 879.

18. T. 17–18.

19. T. 72, finding of the District Court.

20. Apl.'s Br. 20.

At the hearing in the District Court, a question arose as to the DOE's use in the Adams investigation of an allegedly illegally obtained "Report to Special Committee to OKC Corp. by Special Counsel." Appellant's contention in this regard affords no ground to deny enforcement of the subpoena issued to the Bank.

The Department of Energy subpoena, as amended, was issued for a lawfully authorized purpose, for determining compliance with DOE pricing regulations, seeks information relevant to that inquiry, and should be promptly enforced. The November 17, 1978 order of the District Court is AFFIRMED.