UNITED STATES of America and George W. Hubbard, Audit Director, and Economic Regulatory Administration, Department of Energy, Petitioners–Appellees,

v.

PASCO PETROLEUM CO., INC., Respondent–Appellant.

No. 9–51.

Temporary Emergency Court of Appeals.

Argued Sept. 19, 1980.

Decided Oct. 16, 1980.

James P. Tierney, Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, Mo., with whom Alfred R. Hupp, Jr., Kansas City, Mo., and Loren W. Counce,

Jr., Snell & Wilmer, Phoenix, Ariz., were on brief, for respondent–appellant.

Paul A. Katz, Phoenix, Ariz., with whom Michael D. Hawkins, U. S. Atty. and John D. Lyons, Jr., Asst. U. S. Atty., Phoenix, Ariz., and Terry L. Anderson, Asst. Regional Counsel, U. S. Department of Energy, Los Angeles, Cal., were on brief, for petitioners–appellees.

Before INGRAHAM, ESTES and LACEY, Judges.

ESTES, Judge:

Respondent–Appellant, Pasco Petroleum Co., Inc. (Pasco), an Arizona corporation, is engaged in the marketing of gasoline and under the Department of Energy (DOE) regulations is a reseller–retailer as that term is defined in 10 CFR § 212.31. On June 29, 1978, Pasco received a Data Statement Letter (DATS Letter) from George W. Hubbard, Area Manager, Enforcement Division of Region IX of the ERA of the DOE, advising the firm that it had been selected for investigation of its compliance with DOE pricing regulations for the sale of petroleum products during the period November 1, 1973–April 30, 1974. The letter requested Pasco to make available to DOE all data showing the firm's manner of computing its maximum lawful selling prices for its sales of petroleum products during this period, including information on the firm's May 15, 1973 selling prices and increased product costs.

Pasco agreed to an August 22, 1978 meeting with a DOE auditor for the examination of the records. Pasco's counsel,* however, began to question the legality of the examination under a DOE audit policy statement published on June 23, 1978, and so informed the auditor and his superiors prior to the August meeting date.

Pursuant to the DATS Letter and arrangements previously made with Pasco's comptroller, a DOE auditor appeared at Pasco's office in Phoenix on August 22, 1978, and asked to inspect Pasco's records. After Pasco's refusal to produce any records except those pertaining to its May 15, 1973 selling prices, Hubbard issued a subpoena to Pasco requiring the company's custodian of records to appear before DOE's Los Angeles office on September 7, 1978, for the examination of documents and materials "relating to all purchases, sales, storage, transportation, and exchanges of covered petroleum products by Pasco Petroleum Co., Inc. in its capacity as a reseller–retailer" for the period April 1, 1973–June 30, 1978. The request for documents included, but was not limited to, all sales and purchase invoices, schedules of all customers, a listing of all credit terms maintained by customers, corporate minutes for all special and regular shareholders' meetings, correspondence files, and copies of all documents relating to the purchase and sale of stock of Pasco Petroleum Co., Inc., and related entities. The subpoena was served on Pasco on August 23, 1978.

Pasco pursued administrative remedies available under 10 CFR Part 205 but was unsuccessful in its efforts to quash the subpoena.[1] The Office of Hearings and Appeals' denial of Pasco's application to quash on January 17, 1979, constituted final agency action in this matter.

In light of Pasco's continued refusal to produce the requested documents, the DOE filed a petition for enforcement of the subpoena in the United States District Court for the District of Arizona on December 5, 1979. Having heard oral argument on February 4, 1980, the District Court issued an order on May 20, 1980, requiring Pasco's compliance with the subpoena. Pasco now

---

* Pasco's counsel, James P. Tierney, certifies he is vice–president, secretary and director of Pasco, and also "officer, director" and shareholder (one of only three) of Pasco Industries Inc., parent corporation of respondent, Pasco Petroleum Co., Inc.

1. The District Director of Enforcement, Region IX, by Decision & Order issued December 18, 1978, modified the terms of the subpoena to extend the time period over which the documents could be produced and to allow production of the documents at Pasco's place of business in Phoenix, rather than at the DOE's Los Angeles office.

appeals to this court, challenging the issuance of the subpoena on the basis of a DOE policy limiting audits of resellers.

The DOE "Statement of Policy Regarding Audits Begun After June 30, 1978 to Determine Compliance with the Mandatory Petroleum Price Regulations"[2] (hereafter referred to as reseller audit policy) limits audits and civil liability of certain resellers by providing that:

A. It is the policy of the Economic Regulatory Administration (ERA) not to commence any price regulation audits after June 30, 1978, at: (1) Any resellers, reseller–retailers or retailers (as defined in 10 CFR 212.31) of petroleum products other than propane, or (2) small resellers, small reseller–retailers or small retailers of propane, except on suspicion of a willful violation of the price regulations, by reason of complaints or other credible indications of significant violations, or if an exception or other special relief from the price regulations has been afforded. Resellers, reseller–retailers or retailers (as defined in 10 CFR 212.31) of propane are considered to be small if they had less than $2 million in sales of propane during calendar year 1977.

B. It is the policy of the ERA not to seek, as a result of price regulation audits commencing after June 30, 1978, to impose civil liability on: (1) Any firm described in paragraph A for transactions that occurred more than two years prior to commencement of the audit; or (2) Any other firm, except crude oil producers, crude oil resellers, and refiners in their crude oil production, sale and resale activities, for transactions that occurred more than five years prior to commencement of the audit, except where a firm has been convicted criminally for transactions covered by price regulations.

Relying on the reseller audit policy, Pasco makes several arguments:

1. The DATS Letter Pasco received on June 29, 1978, was not the commencement of the audit and, therefore, the audit is barred by the new policy.

2. If the DATS Letter did begin the audit, then the policy precludes the expansion of the audit to all but the two most recent years preceding the audit.

3. The agency lacked "complaints or other credible indications of significant violations" under the "special circumstances exception" of the reseller audit policy. For this third argument, Pasco draws support from DOE's inability to produce any information regarding the identity of the alleged complainant or the complaint itself, a DOE auditor's previous approval of the firm's non product cost pass–throughs,[3] and statements both in written memoranda[4] and at the District Court hearing that the agency was auditing Pasco because it was necessary to "have an enforcement presence in the Phoenix area."[5]

DOE argues that:

1. The subpoena was issued for a lawful purpose and seeks documents relevant to that purpose.

2. The new reseller audit policy does not limit DOE's right to subpoena Pasco's records. The audit began with the issuance of the DATS Letter before the effective date of the new policy; and, in any event, the audit can be justified under the "special circumstances exception" of the policy.

Although there has been some confusion within DOE itself as to the exact status of the new reseller audit policy,[6] that policy is

---

2. 43 Fed.Reg. 27,777 (June 27, 1978); 3 CCH Federal Energy Guidelines ¶ 15,400A.

3. Pasco Brief, Appendix B.

4. Attachment to Memorandum of May 19, 1978, from Jack Wood, Director of Enforcement, Region IX, ERA, to Bart Isenberg, Director, Audit and Enforcement, ERA, Exhibit E–2 to DOE's Petition for Enforcement in the District Court.

5. Transcript 10–11.

6. See: DOE Memo of June 27, 1978, re: "Reseller–Other Audits," Exhibit E–3 to DOE's Petition for Enforcement; the Decision and Order of January 17, 1979, of the Office of Hearings and Appeals (OHA), denying relief to Pasco:

We agree with Pasco that if it could be shown that the Regional Office issued this subpoena in contravention of the new audit

simply a policy, not a regulation or rule. The record in this case reflects that DOE had commenced the Pasco audit prior to the effective date of the DOE reseller audit policy, July 1, 1978;[7] hence such policy is no bar to enforcement of the subpoena. Congress conferred broad subpoena authority on DOE by § 5(a)(1) of the Emergency Petroleum Allocation Act, as amended, 15 U.S.C. § 751 et seq., incorporating § 206 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note; § 13(b), (e)(1) of the Federal Energy Administration Act of 1974, 15 U.S.C. § 761 et seq.; and § 645 of the Department of Energy Organization Act, 42 U.S.C. § 7101 et seq., which grants to the Secretary of Energy and his duly authorized agents the same powers and authority granted the Federal Trade Commission under the FTC Act, 15 U.S.C. § 49, which authorizes the Commission "to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation." The regulations promulgated pursuant to these statutes, 10 CFR §§ 205.201(a), 205.8, in no way restrict the subpoena authority of the DOE.

■ The limited role of the reviewing court in a subpoena enforcement proceeding has been throughly explored by this Court in *United States v. Empire Gas Corp.*, 547 F.2d 1147 (Em.App.1976), *cert. den.* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592, *United States v. Bell*, 564 F.2d 953 (Em.App.1977), *United States v. First City National Bank*, 598 F.2d 594 (Em.App.1979), and *United States v. Southwest National Bank*, 598 F.2d 600 (Em.App.1979). The only issues properly before a court in any subpoena enforcement proceedings are "whether the subpoena was issued for a lawfully authorized purpose and whether it seeks information relevant to the agency's inquiry." *United States v. Southwest National Bank*, supra at 602.

■ The DOE is charged by Congress with determining compliance with and enforcing the Mandatory Allocation and Price Regulations. The subpoena to Pasco was issued in aid of a DOE investigation to determine Pasco's compliance with the reseller pricing regulations, clearly a lawfully authorized purpose. Unquestionably the subpoena seeks information relevant to the agency investigation. *United States v. Southwest National Bank*, supra.

■ Pasco has, however, argued that DOE is attempting through this procedure to apply retroactively Ruling 1975–14 regarding non–product cost justification, despite DOE's approval of Pasco's selling prices and margins in a prior audit.[8] A later regulation, 10 CFR § 212, imposes on resellers the obligation of justifying their non–product cost pass–throughs. Although by statutory amendment of the FEA Act, known as the Findley amendment, DOE is precluded from enforcing this regulation

policy established by the national office, it would raise a serious question as to the propriety of the subpoena's issuance.... [T]his audit appears to be consistent with the policy of limiting audits to cases where there are 'credible indications of significant violations.' and the Decision & Order of July 10, 1979, in *Glenn Martin Heller*, where OHA determined that

the Statement of Policy does not in our view bar enforcement actions against individual members of the specified class.... A general statement of policy does not impose any rights or obligations on a regulated firm. ...

7. In particular, see the matters referred to in the Brief of Appellee, pp. 9–13, including, but not limited to, the memorandum of June 27, 1978, from Barry E. Wagman, Director of the National Office of Enforcement Policy and Planning, to Jack L. Wood, instructing Wood to start the audit of Pasco by issuing the DATS letter (p. A–10 of Appellee's Brief); the DATS letter of June 27, 1978; 10 CFR § 210.92(d); 10 CFR § 210.92(d)(2)(A) and especially the preamble thereof regarding the DOE definitive list of all open audits as of June 30, 1978, 43 F.R. 27779; the appearance of Pasco's name on the DOE's definitive list of open audits as of June 30, 1978 (p. A–14, Appellee's Brief). And see key opinion in *United States v. Bell*, 564 F.2d 953 (TECA 1977), and authorities cited therein.

8. Pasco was audited for the period January 1, 1974–July 31, 1974. The agency approved Pasco's wholesale and retail margins and found the firm's retail outlets to be slightly underpriced as a result of competition in the area. See note 3, supra.

retroactively, Pasco maintains that its non–product cost pass–throughs form the basis of DOE's assertion that Pasco's overcharges may exceed $1 million. This matter is one which Pasco would be entitled to present in defense against an administrative complaint or in a collateral action, but it is not a proper defense to the enforcement of the subpoena. *United States v. Southwest National Bank*, supra, *United States v. Empire Gas Corp.*, supra at 1152 n. 3, and *United States v. Bell*, supra.

Pasco's challenge of the DOE subpoena is without merit; and Pasco's argument that the DOE reseller audit policy bars enforcement of the subpoena is also without merit. The order of the District Court appealed from is AFFIRMED. Pasco must comply with such subpoena forthwith. IT IS SO ORDERED. ·