UNITED STATES of America, on behalf of James Edwards, Secretary of the Department of Energy, Petitioners-Appellees,

v.

FITCH OIL COMPANY, Jerry S. Fitch, Smith Oil, Inc. and J. C. Smith, Respondents-Appellants.

No. 5–70.

Temporary Emergency Court of Appeals.

March 23, 1982.

As Corrected April 2, 1982.

W. Dennis Summers of Summers, Hendrick, Spanos, Phillips & Grant, Atlanta, Ga., and William Spencer of Crutcher, Spencer & Brown, Holly Springs, Miss., for respondents-appellants.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Glen H. Davidson, U. S. Atty., Oxford, Miss., R. John Seibert and June Wagoner, Attys., Dept. of Justice, Civ. Div., Washington, D. C., for petitioners-appellees.

Before INGRAHAM, ESTES and BECKER, Judges.

WILLIAM H. BECKER, Judge.

This is an appeal from judgments and orders of the United States District Court for the Northern District of Mississippi granting the petitions of the United States of America on behalf of the Secretary of the Department of Energy (DOE) to enforce, against Appellants, subpoenas duces tecum for books, records and papers described in the subpoenas.

We conclude that we should affirm the judgments and orders of the District Court.

### The Facts

On January 29, 1981, DOE served identical subpoenas duces tecum on Appellants Fitch Oil Company and Jerry S. Fitch, owner, and Smith Oil, Inc. and J. C. Smith, President. Both Mr. Fitch and Mr. Smith were required to appear and testify before DOE and to bring with them certain business records relating to their sale and allocation of motor gasoline during the period from January 1978 to February 1980 to determine whether as petroleum resellers they were in violation of the mandatory petroleum price and allocation regulations (10 C.F.R. Parts 210, 211, and 212).[1] On February 24, 1981, Appellants sought supervisory review of the subpoenas pursuant to 10 C.F.R. § 205.8(b)(4). [Appellants' Br. 2] On February 25, 1981, the District Manager of the Economic Regulatory Administration, James Easterday, notified Appellants pursuant to and in accordance with 10 C.F.R. § 205.8(b)(4) and (5) that if they did not hear from him within 10 days the subpoenas would be effective as issued. Appellants received no further communications from ERA with regard to the subpoenas. [R. 63] Counsel for Appellants received an extension until March 3, 1981, to comply. [Appellants' Br. 2]

Appellants did not comply with the subpoenas on March 3 and the United States on behalf of James Edwards, Secretary of DOE, began enforcement proceedings in the United States District Court for the Northern District of Mississippi. On September 14, 1981, that Court issued an Order to Show Cause why Fitch Oil Company and Jerry S. Fitch should not comply with the subpoenas issued by DOE. [R. 2] The United States filed a Petition to Enforce Department of Energy Subpoena against Smith Oil, Inc. and J. C. Smith on September 24, 1981. [R. 4; Appellees' Br. 3] Appellants filed motions to dismiss the petition for enforcement with memoranda in support. [R. 34, 36, 61, 62] The United States filed Petitioner's Response to Respondent's Motion to Dismiss, and memorandum in support on October 5. [R. 86, 103] On

---

1. The mandatory petroleum price regulations promulgated pursuant to the Emergency Petroleum Allocation Act of 1973, as amended, "were upheld as valid and constitutional in *Consumers Union of U. S., Inc. v. Sawhill*, 525 F.2d 1068 (Em.App.1975); *Condor Operating Co. v. Sawhill*, 514 F.2d 351 (Em.App.1975),

cert. denied, 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467; and *Cities Service Co. v. F.E.A.*, 529 F.2d 1016 (Em.App.1975), cert. denied, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184." *United States v. Zang*, 645 F.2d 999, at 1001 note 3 (Em.App.1981).

October 8, 1981, the District Court consolidated the hearings in these cases and after consideration of the briefs and arguments of counsel,[2] ordered Appellants to comply with the subpoenas. [R. 105–106, 185–193] Appellants filed Respondent's Motion for Reconsideration of Alteration of Judgment, and a Motion for Stay Under Rule 62(b) (pending the motion for reconsideration of the judgment), which the District Court denied on October 27, 1981. [R. 107, 134, 145] Although Appellants state that they have complied with the subpoenas [Appellants' Br. 2], they appeal from the two Orders of the District Court and seek in this Court a return of their records and an order forbidding information obtained from such records from being used to conduct a DOE audit. [Appellants' Br. 2]

### The Contentions of Appellants

Appellants contend that the subpoenas are unenforceable because:

(A) they were initiated in violation of the audit policy adopted by DOE on June 27, 1978, and set forth in 43 Fed.Reg. 27777;

(B) the Secretary of Energy had not properly delegated subpoena authority to the issuing officer and did not publish the delegation orders;

(C) the subpoena procedure of DOE violated the requirements of the Due Process Clause and the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559; and

(D) the subpoenas failed to provide a reasonable basis for evaluating the relevancy to the underlying investigation, and were unreasonably burdensome and vague.

### A

The first challenge of Appellants to the enforceability of the subpoenas is based on their contention that the subpoenas were issued in violation of the reseller audit policy of DOE. On June 27, 1978, DOE published an audit "policy" which stated the intention of DOE to concentrate its enforcement efforts on larger firms and proposed to initiate no new audits of small resellers of petroleum after June 30, 1978, except in special circumstances such as willful violations or when an exception or other special relief had been granted. 43 Fed.Reg. 27777 (June 27, 1978). The audit policy was not promulgated pursuant to the formal rulemaking procedures of the APA. No notice was given nor public comments solicited with regard to this policy.[3] The audit policy was withdrawn by the agency effective May 19, 1981. 46 Fed.Reg. 28474 (May 27, 1981). Appellants cite *United States v. Tobins*, 512 F.Supp. 308 (D.Mass.1981) in support of their contention.

In the *Tobins* case, *supra*, the District Court refused to enforce a subpoena issued against a small reseller of petroleum during the effective period of the DOE audit policy statement. In that case the District Court held that, although it was not a formal rule, the audit policy statement should be binding upon the agency because it was promulgated with "procedural formalities attending its publication" (a point which we have already discussed); that the audit policy statement was a "response to public and Congressional dissatisfaction with then-existing DOE audit practices"; and that the "substantive context in which the policy was promulgated and the procedural formalities attending its publication distinguish the audit policy statement from the type of interpretive rules, guidelines, general policy statements, and instructions to staff sometimes held not to be binding on the issuing agency." *Tobins, supra*, 512 F.Supp. at 315. Furthermore, the District Court in the *Tobins* case, *supra*, held that

---

**2.** Both Appellants were represented by same counsel.

**3.** It should be noted that within the same Federal Register Notice DOE announced its final rulemaking regarding the amendment to the recordkeeping requirement, 10 C.F.R. § 210.92.

This amendment was promulgated after DOE's consideration of comments of those who had responded to the DOE's notice of proposed rulemaking published on December 29, 1977. 42 Fed.Reg. 64902.

the public announcement of this policy invited reliance by the regulated entities upon this statement. Therefore, basing his decision on *United States v. Leahey*, 434 F.2d 7 (1 Cir. 1970), District Judge Keeton held that "[a] regulatory agency is not free to declare one policy publicly, and in its communications with Congressional committees, and then follow a different practice in its dealings with regulated entities and individuals." *Tobins, supra*, 512 F.Supp. at 314. Thus, the District Court in *Tobins* relying on the *Leahey* case, *supra*, held DOE bound by its published audit policy. We disapprove the ruling of the *Tobins* case, which was not reviewed by this Court.[4]

Our disagreement with the *Tobins* case, *supra*, is based on its interpretation and application of the *Leahey* case, *supra*. In the *Leahey* case, the Court, in a criminal tax fraud prosecution, excluded evidence obtained by Internal Revenue Service (IRS) agents conducting an investigation who failed to follow a "published general procedure" of the agency. The published procedure stated that the investigative IRS agent, upon initial contact with a taxpayer, must inform the taxpayer that the agent has the function of investigating the possibility of criminal tax fraud; and that, if further investigation is required, the agent is required to advise the taxpayer of his right to remain silent and right to counsel. The IRS adopted the procedure in response to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in which the Supreme Court "specifically asked law enforcement agencies to develop better ways of harmonizing the protection of individual rights with efficient enforcement of the law." *Leahey, supra*, 434 F.2d at 10. The press release concerning the guideline of the IRS stated that it was promulgated in response to " 'a number of inquiries' and avowedly for the purpose of 'protecting the Constitutional rights of persons suspected of criminal tax fraud.' " *Leahey, supra*, 434 F.2d at 10. The Court in *Leahey* held the agency accountable to its statement of procedure because the procedure was adopted to protect constitutional rights of the individual. This holding is consistent with many other cases which required an agency to abide by its own rules and procedures when they are adopted pursuant to the Constitution or federal statutes.[5]

---

**4.** Title 5 § 552(a)(1)(D) U.S.C. of the APA expressly authorizes publication by each agency of statements of general policy and interpretations of general applicability which are exempt from the notice and comment procedures of § 553 of the APA as provided in § 553(b)(A). Title 44, § 1504 U.S.C. of the Federal Register Act provides for publication of documents authorized, as well as those required, to be published in the Federal Register. Publication of a statement of agency policy not required by a statute or the Constitution and exempt from the rulemaking notice and comment procedures of the APA under § 553(b)(A) does not transform the agency policy into a judicially enforceable rule under any controlling authority. Any other legal doctrine would discourage the agencies in the exercise of the salutary, voluntary privilege of formulating and publicizing revocable internal policies. *Cf. United States v. Caceres*, 440 U.S. 741, 755–57, 99 S.Ct. 1465, 1473–74, 59 L.Ed.2d 733, at 746 (1979).

**5.** Other cases relied on in the *Tobins* case are distinguishable.

In *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) the Secretary of State was required to follow procedural (due process) regulations in discharging the petitioner, a civil servant, from duty in the State Department. These administrative regulations were promulgated and intended to safeguard personal liberties of the employees and applicants from unfounded accusations of disloyalty.

In *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) the discharge of a government employee was overturned for lack of procedural (due process) safeguards, such as no opportunity to cross-examine witnesses and no proper notice of the grounds for dismissal.

In *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) the Supreme Court overturned a deportation order of the Immigration and Naturalization Service entered in contravention of the agency's regulations governing the deportation hearing, holding that these regulations were adopted pursuant to a federal statute and assured petitioner a fair hearing and were therefore binding on the agency.

In *Bridges v. Wixon*, 326 U.S. 135, 152, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103, at 2114 (1945) the Supreme Court ordered an agency to follow its regulations in its deportation proceedings stating, "The rules are designed to protect the interests of the alien and to afford him due process of law."

It seems that the District Court in the *Tobins* case misconstrued the *Leahey* case. While it is true that the Court in the *Leahey* case recognized that taxpayers may have relied to their detriment on the published statement of the procedure of the agency, this was not their main concern as illustrated by the Court's statement that, "[n]o one has the right to commit a crime, even if misled by the government as to its enforcement methods." *Leahey, supra*, 434 F.2d at 11.

The Court in the *Leahey* case also expressed an objective of securing uniform conduct by all agents as one reason for its holding, but restricted the effect of that reason by the statement that "[t]he I.R.S. has no great incentive to scrutinize carefully the conduct of interviews by its Agents, if the conduct does not affect the result of the prosecution." *Leahey, supra*, 434 F.2d at 10. "Conduct" could affect the result of the prosecution only if the investigation were conducted in violation of the taxpayers' constitutional or statutory rights, rendering the result inadmissible. The Court in the *Leahey* case was not holding that agencies must follow all of their procedure or policy statements if published in the Federal Register, but was enforcing an administrative guideline promulgated to protect the constitutional due process rights of individuals. The "result would have been different if the I.R.S. had violated a procedure designed to promote some other agency goal" explained the Court. *Leahey, supra*, 434 F.2d at 11.

The DOE audit policy here, as in the *Tobins* case, was not designed to protect due process rights, or to fulfill some constitutional objective or to implement the mandate of a federal statute. So the *Tobins* case is legally and factually distinguishable from the *Leahey* case on which it relies.

■ The audit policy in question was not a legislative rule by designation or substance. It was intended to govern internal agency procedures. Therefore it was not binding on DOE. See discussions of the various reasonings adopted by the courts to reach this result. 3 Mezines, Stein & Gruff, *Administrative Law*, § 13.03[2] at pages 13–38 to 13–40; 2 Davis, *Administrative Law Treatise*, Second Edition, § 7:21; Note, *Violations by Agencies of Their Own Regulations*, 87 Harvard Law Review 629, at 629–630. Regardless of the rationale of the similar holdings in results, we conclude that the audit policy, later revoked, did not vest any constitutional or statutory right in Appellants that invalidated the subpoenas in question.

In 3 Mezines, Stein & Gruff, *Administrative Law, supra*, § 13.03[2], at pages 13–38 to 13–40, it is stated with adequate citation of authorities in the omitted footnotes that:

The general rule that validly promulgated rules and regulations have the full force and effect of law is subject to several exceptions. The rule does not apply to agency violations that are intended to regulate internal agency procedures rather than to protect any interest of the objecting party. For the most part, the courts have not allowed agencies to violate any rules and regulations that were promulgated to benefit a party, either by entitling him to a substantive benefit or exemption or to a procedural safeguard. By implication, therefore, the courts have in some instances permitted an agency to violate its own rules and regulations on the ground that the promulgated procedures were not intended to benefit an aggrieved party, or to vest any rights in such a party.

Furthermore, the courts have held that an administrative agency may make *ad hoc* changes that relax or modify its procedural rules as long as that action does not injure or substantially prejudice the complaining party.

As stated in the last paragraph of the quotation, the modification of the audit policy rules, after issuance of the subpoenas and before the enforcement proceedings, was permissible and valid. In a similar case the Supreme Court of the United States had held that an administrative agency "is entitled to a measure of discretion in administering its own procedural rules in such a manner as it deems necessary" when

"[t]he rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion . . . ." *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547, at 552–553 (1970).

 The revocation of the audit policy, determined to vest no rights in Appellants, does not require reissuance of the subpoenas in question by DOE before seeking enforcement in the District Court. Reissuance would be a useless, time consuming procedure, as determined by the District Court.

Moreover, the complaint of Appellants that they relied on this policy, even if it were proven, in no way relieved them of the duty to comply with the law.[6]

For the reasons stated above, we hold that the DOE audit policy was not binding on the agency. This is consistent with our pronouncements on this same issue in *United States v. Pasco Petroleum Co., Inc.*, 633 F.2d 956, at 958–959 (Em.App.1980), *cert. denied*, 450 U.S. 995, 101 S.Ct. 1698, 68 L.Ed.2d 195 (1981), and *United States v. Pel-Star Energy, Inc.*, 670 F.2d 1032 (Em. App.1982).

### B

 Appellants next complain that the subpoenas are invalid because the issuing officer, Ernest Powell, had not properly been delegated the power to issue the subpoena. In fact, two orders delegated to Powell the power to issue subpoenas. The Delegation Order dated August 1, 1979 from James C. Easterday, District Manager, Southeast Division, delegated power to auditors and investigators to issue subpoenas. [R. 33D and 33E] Another Delegation Order of the same date designates Ernest Powell as Special Investigations Program Manager. In his capacity as Special Investigations Program Manager, Powell was certainly also an auditor and investigator. To narrowly view these orders as an ineffective delegation of the subpoena power to Powell would unnecessarily frustrate the efficient workings of the agencies in their efforts to achieve their statutory objectives. *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947). Also without merit is Appellants' claim that the original link in the delegation chain, the Continuity of Operations Statement of the Secretary of Energy, is invalid because it was not published in the Federal Register. The APA, 5 U.S.C. § 552[7], "does not require that all internal delegations of authority . . . must be published in order to be effective. Under the provisions of 5 U.S.C. § 552, the requirement for publication applies only to matters which, if not published, would adversely affect a member of the public." *Hogg v. United States*, 428 F.2d 274, at 280 (6th Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *United States v. Goodman*, 605 F.2d 870, at 887–888 (5th Cir. 1979). Appellants have failed to show an adverse effect imposed upon them by the failure of the agency to publish the continuity of operations statement. See the *Hogg* case, *supra*, 428 F.2d at 280.

### C

 Appellants' next challenge to the enforceability of this subpoena is that the review procedure provided at 10 C.F.R. § 205.8(b)(4) is not in accordance with due process. This argument is easily refuted by the fact that "[t]here is no administrative appeal of a subpoena. . . ." 10 C.F.R. § 205.8(b)(6). No administrative appeal is required. *United States v. Exxon Corp.*, 628 F.2d 70, at 76–77 (D.C.Cir.1980), *cert. denied*, 446 U.S. 964, 100 S.Ct. 2940, 64 L.Ed.2d 823 (1980). Appellants seek to de-

---

6. Nor were Appellants relieved of the duty of recordkeeping with regard to their petroleum sales. 10 C.F.R. § 210.92 (1979).

7. The APA is incorporated by § 501 of the Department of Energy Organization Act, 42 U.S.C. § 7191(a)(1).

scribe erroneously as an administrative appeal of a subpoena, lacking impartiality and due process safeguards, what is simply a procedure to seek review and possible modification, or rescission, and extension of the time for compliance by the issuing officer. It is true that there is no hearing and no opportunity for the subpoenaed party to respond at the administrative level. However, there are no self-executing enforcement powers attributed to the agency. In these circumstances, the subpoenaed party risks no penalties for good faith non-compliance at the agency level. Rather, the agency must seek enforcement through the district courts in proceedings in which full due process is afforded. It is in the enforcement proceeding that the subpoenaed party has a day in court in a plenary adversary hearing, with procedural due process, .as in the District Court in this case. If the subpoenaed party has made good faith objections to the subpoena at both the administrative and district court levels, the party risks no administrative imposition of penalties or contempt for non-compliance. After a hearing consistent with due process requirements, if the subpoenaed party still refuses compliance with the order of a district court, the party for the first time may be found in contempt.

Thus, the enforcement procedure was adequate protection of the procedural due process rights of the Appellants. *See Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); *Wearly v. F.T.C.*, 616 F.2d 662 (3rd Cir. 1980), *cert. denied*, 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980); *American Motors Corp. v. F.T.C.*, 601 F.2d 1329 (6th Cir. 1979), *cert. denied*, 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *Atlantic Richfield Co. v. F.T.C.*, 546 F.2d 646 (5th Cir. 1977); *Anheuser-Busch, Inc. v. F.T.C.*, 359 F.2d 487 (8th Cir. 1966).

**D**

■ Finally, we conclude that Appellants' challenge to the relevancy and description of the subpoenaed documents is without merit. The documents are reasonably relevant to the purpose of determining Appellants' compliance with the mandatory petroleum price and allocation regulations, and are described with reasonable specificity.

The record, including that of a full and fair plenary hearing by the District Court, supports the findings by the District Court that the information and records sought by the subpoenas were relevant, were sufficiently described and the required production was not unreasonably burdensome. The Appellees fully sustained the initial and ultimate burdens of proof of validity of the subpoenas resting on the Appellees. *United States v. Security State Bank & Trust*, 473 F.2d 638, at 642 (5th Cir. 1973). The Appellants did not meet the burden of going forward to show "in a substantial way the existence of substantial deficiencies in the summons proceedings" in the view of the law on the effect of the audit policy expressed above in this · opinion. *United States v. Newman*, 441 F.2d 165, at 169 (5th Cir. 1971).

On the burdens of proof applicable in judicial enforcement proceedings see 3 Mezines, Stein & Gruff, *Administrative Law*, § 21.02[2][iv] at pages 21–26 to 21–28.

The following additional authorities support the findings of the District Court. "Basically, the power to compel the production of the records of any organization . . . arises out of the inherent and necessary power of the federal and state governments to enforce their laws . . . ." *United States v. White*, 322 U.S. 694, at 701, 64 S.Ct. 1248, at 1252, 88 L.Ed. 1542, at 1547 (1944) quoted in *United States v. Empire Gas Corp.*, 547 F.2d 1147, at 1153 (Em.App.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 592 (1977). For the procedure in the District Court the following language of this Court supports the District Court.

The district court correctly stated: "It is . . . significant. that the applicability of the regulations to respondents cannot be determined until the information sought

by subpoena is made available to the [DOE] investigators." *United States v. Empire Gas Corp., supra,* 547 F.2d at 1153.

This Court has upheld subpoenas for similar documents for the same stated purpose many times. See list of authorities (p. 4 Slip Opinion) *United States v. Pel-Star Energy, Inc., supra,* 670 F.2d 1032, at 1033 (Em.App.1982).

## CONCLUSION

For the foregoing reasons, we conclude that the subpoenas are valid and enforceable. Therefore, the judgments and orders of the District Court are hereby affirmed.