**UNITED STATES of America**

v.

**PHOENIX PETROLEUM COMPANY.**

**Civ. A. No. H–82–1727.**

United States District Court,
S.D. Texas,
Houston Division.

June 23, 1982.

---

18

Robert Herring, Daniel K. Hedges, U.S. Atty., Houston, Tex., for plaintiff.

James W. Dilworth, Bruce R. Coulombe, Andrew & Kurth, Houston, Tex., for respondent.

## MEMORANDUM AND ORDER

CIRE, District Judge.

This is an action to enforce an administrative subpoena issued by the United States Department of Energy ("DOE"). The subpoena was issued in the course of an audit of Respondent Phoenix Petroleum Company ("Phoenix"), a reseller of petrole-

um products. Petitioner brought this proceeding pursuant to section 645 of the Department of Energy Organization Act of 1977 (DOEOA), 42 U.S.C. § 7255; section 13(e) of the Federal Energy Administration Act of 1974 (FEAA), 15 U.S.C. § 772(e) and section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 754(a)(1).

The Petitioner alleges that the requested information regarding purchases, sales, exchanges, and other acquisitions and dispositions of crude oil is necessary to determine compliance with DOE rules and regulations providing for the allocation and pricing of crude oil. The Respondent challenges the subpoena on various grounds: (1) use of summary enforcement proceedings is inappropriate in this case; (2) lack of authority by the DOE to issue the subpoena; (3) lack of authority by the issuing official, James Louthan to issue the subpoena; (4) failure of DOE to make a prima facie case for enforcement of the subpoena; (5) improper purpose of issuing the subpoena; and (6) irrelevance of information sought.

The Court denied the Respondent's motion for discovery but directed that the issuing agent be produced by the Government for the hearing. A hearing was held on January 17, 1983. For the reasons stated below, the Court concludes that the subpoena should be enforced.

Phoenix first contends that the use of a summary enforcement proceeding is inappropriate in this case because the EPAA and EPAA regulations were repealed before the DOE began enforcement proceedings in this case. Phoenix argues, therefore, that no present or future public interest requires the expedited enforcement provided by summary proceedings.

■ "The public interest in 'speedy resolution' of violations of the EPAA is not lessened because the Act itself is no longer in effect; rather, 'speedy resolution' of any remaining questions of EPAA violations which may have occurred during regulation should be all the more in the public interest." *United States v. RFB Petroleum,*

*Inc.,* 703 F.2d 528, 532–533 (Em.App.1983). *See Bray v. United States,* 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975). DOE enforcement proceedings are summary in nature in accordance with section 4(b)(1)(F) of the EPAA. *RFB Petroleum,* at 532–533; *United States v. Bell,* 564 F.2d 953, 959 (Em.App.1977). The use of a summary enforcement proceeding is proper in this action. *See United States v. Lotus Petroleum, Inc.,* 678 F.2d 1082 (Em.App. 1982); *United States v. Andrus Energy Corp.,* 678 F.2d 1081 (Em.App.1982); *United States v. Fitch,* 676 F.2d 673 (Em.App.1982).

Second, Phoenix alleges that the DOE lacked the authority to issue the subpoena because the EPAA has expired and the President has ordered deregulation of DOE price and allocation controls. In response, the Government cites 15 U.S.C. § 760g which provides in part:

> "The authority to promulgate and amend any regulation, or to issue any order under this Chapter shall expire at midnight September 30, 1981, but such expiration shall not affect any action or pending proceedings, administrative, civil or criminal action or proceeding, whether or not pending, based upon any act committed or liability incurred prior to such expiration date."

■ The present action is an "enforcement proceeding" in which the Government is seeking to enforce a subpoena under the powers granted in the DOE Act. 15 U.S.C. § 760g gives authority to entertain any action or proceeding based upon acts committed prior to the expiration date. The language of section 760g is clear that the expiration of the EPAA on September 30, 1981, does not impair the Government's authority to subpoena documents pertaining to transactions involving the transfer of petroleum products. *United States v. Armada Petroleum Corp.,* 562 F.Supp. 43 (S.D.Tex.1982), *aff'd on other grounds,* 700 F.2d 706 (Em. App.1983).

The Respondent also contends that James Louthan lacked authority to issue the subpoena because the power was never properly delegated to him. Phoenix submits that the delegation orders are invalid because (1) James Fenton was in an acting capacity when he redelegated the subpoena power to his subordinates; (2) one delegation order is unsigned; and (3) Barton House, the Acting Administrator of the ERA at the time the subpoena was issued, never delegated subpoena authority to anyone although his predecessor, David Bardin's delegation order had never been rescinded.

■ Through the submitted delegation orders and James Louthan's testimony, the Government has shown a chain of authority delegating the power to issue subpoenas to Mr. Louthan. In *United States v. Fitch,* the court noted that "[t]o narrowly view these orders as an ineffective delegation of subpoena power ... would unnecessarily frustrate the efficient workings of the agencies in their efforts to achieve their statutory objectives." 676 F.2d at 678. Further, James Louthan's authority to issue subpoenas and other virtually identical delegation orders have been upheld by courts. *RFB Petroleum,* at 533; *Fitch,* 676 F.2d at 678; *Armada Petroleum,* 562 F.Supp. at 49–50. Therefore, the Court concludes that James Louthan had the authority to issue the subpoena to Phoenix.

■ Next, Phoenix argues that the Government has not made a prima facie case for enforcement of the subpoena. The two issues before the Court in a subpoena enforcement hearing are: (1) whether the subpoena was issued for a lawfully authorized purpose and (2) whether the subpoena seeks information relevant to the agency's inquiry. *RFB Petroleum,* at 530; *United States v. Pasco Petroleum Co.,* 633 F.2d 956, 959 (Em.App.1980), *cert. denied,* 450 U.S. 995, 101 S.Ct. 1698, 68 L.Ed.2d 195 (1981); *United States v. Bell,* 564 F.2d 953, 959 (Em.App.1977). The Government presented its prima facie case by the documents in the record and the testimony of James Louthan which show the lawfully authorized purpose and the relevancy of the documents sought. The subpoena seeks information similar to subpoenas upheld by the Temporary Emergency Court of Appeals as being issued pursuant to the same lawfully authorized

20

purpose. *See RFB Petroleum,* at 530–531; *United States v. Pel-Star Energy, Inc.,* 670 F.2d 1032, 1033 (Em.App.1982), and the authorities cited therein. *See also Apache Oil Co. v. United States,* 694 F.2d 714, 715 (Em.App.1982); *United States v. Ted True, Inc.,* 687 F.2d 491, 492 (Em.App.1982); *United States v. LaJet, Inc.,* 685 F.2d 1378, 1380–82 (Em.App.1982). The Court concludes that the Government has made a prima facie case for enforcement of the subpoena.

Once the Government has made its preliminary showing in support of the subpoena, the burden of showing that the enforcement of the subpoena would be an abuse of the Court's process is with the Respondent. *Bell,* 564 F.2d at 958. Phoenix contends that the subpoena was improperly issued both because the DOE has an institutional commitment to refer the Phoenix investigation to the Department of Justice for criminal prosecution and because the subpoena was issued in response to Congressional influence.

■ The hearing testimony established that the Phoenix investigation has not been referred to the Department of Justice for criminal prosecution. Before a referral to the Department of Justice is made, an administrative subpoena is issued for the improper purpose of gathering information for a criminal case only if the issuing agency is found to have formed an institutional commitment to refer the case, along with a concurrent abandonment of any civil purpose. *United States v. LaSalle National Bank,* 437 U.S. 298, 313–15, 98 S.Ct. 2357, 2365–67, 57 L.Ed.2d 221 (1978); *RFB Petroleum,* at 530–31; *United States v. Juren,* 687 F.2d 493, 494 (Em.App.1982). The evidence introduced at the hearing and in the record show no such commitment by the DOE to refer the Phoenix investigation for criminal prosecution.

■ The Respondent has not proven that the sole purpose of the investigation is to gather evidence for a criminal prosecution. Unsupported allegations of bad faith and improper purpose are not sufficient to prove an improper purpose. *RFB Petroleum,* at 532; *Juren,* 687 F.2d at 494.

Phoenix also alleges that undue Congressional influence was brought to bear upon the DOE officials urging them to investigate crude oil resellers for violations of the EPAA. Courts have recognized the importance of Congressional committees on oversight and investigation, and they are sensitive to Congress' interest in the objective and efficient operations of regulatory agencies. *Gulf Oil Corp. v. FPC,* 563 F.2d 588, 610 (3d Cir.1977), *cert. denied,* 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978); *Armada Petroleum,* 562 F.Supp. at 50. However, under the principal established by *Pillsbury v. FTC,* 354 F.2d 952 (5th Cir. 1966), courts must not allow interference with an administrative agency's decisionmaking process. *Armada Petroleum,* at 50. The *Pillsbury* doctrine operates to prevent an agency from ordering an investigation because of political pressure. *SEC v. Wheeling-Pittsburgh Steel Corp.,* 648 F.2d 118, 130 (3d Cir.1981); *Armada Petroleum,* at 51. However, when the Congressional involvement is directed at accelerating enforcement proceedings as a class and is not directed at the merits of particular cases, it has been held that the legislative conduct does not affect the fairness of the agency's proceedings and does not warrant setting aside its order. *Gulf Oil,* 563 F.2d at 611.

■ From the testimony given in this action and the record, it appears that the Congressional interest was not directed at the merits of the Phoenix audit but at accelerating the audits and the agency's enforcement of DOE regulations. Further, other courts which have considered undue Congressional influence upon DOE officials to investigate crude resellers have concluded that the crude oil resellers did not demonstrate that the subpoenas were issued for an improper purpose because of Congressional influence. *RFB Petroleum,* at 532–533; *Armada Petroleum,* at 51.

■ Phoenix's last contention is that the documents sought are neither relevant nor necessary and, further, that the DOE already has the documents and is on a "fish-

ing expedition." The test for relevancy of subpoenaed items is whether the material sought is reasonably relevant to the purpose of the investigation. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950). The Temporary Emergency Court of Appeals has held that for a DOE subpoena, this standard does not require a showing of specific need for information. *United States v. First City Nat'l Bank of El Paso*, 598 F.2d 594, 599 (Em. App.1979). The agency's subpoena requests are to be measured against the general purposes of its investigation. *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). The Phoenix subpoena requests all documents relating to Phoenix's purchases, sales, exchanges, and other acquisitions and dispositions of crude oil during a specified period. These documents are reasonably relevant to DOE's responsibility in determining Phoenix's compliance with price and allocation regulations. The Temporary Emergency Court of Appeals has upheld similar subpoenas as seeking relevant information. *RFB Petroleum*, at 530–531, and the authorities cited therein.

██ Mr. Louthan's testimony indicates that the DOE may have in its possession copies of many of the requested documents. However, these documents are not in the possession of the officials who will conduct the audit, and to conduct a complete and orderly audit the DOE needs to have the documents produced from their original source in a comprehensive manner.

In seeking documents relevant to its enforcement purpose, DOE is clearly not on an "impermissible fishing expedition" into the affairs of Phoenix as the Respondent alleges. The subpoena does state a purpose against which the relevancy of the subpoenaed documents can be examined. *See Pel-Star Energy*, 670 F.2d at 1033–34, and the authorities cited therein.

Accordingly, it is ORDERED that the Respondent comply with the subpoena.